your argument next in case number 1937-12 Tengreti v. Semple. Mr. Beiser. Good morning, your honors. Matthew Beiser, Assistant Attorney General on behalf of Defendant Counselor Bachman. Can everybody hear me? Yes. Yes. Okay, thank you. May it please the court, I want to start my argument today with just a few seconds on the context of this case. Everyone would agree that there's never an appropriate circumstance for a correctional officer to have any sort of sexual contact with an inmate, which is what occurred here. And clearly the correctional officers involved in this situation were wrong. However, the context is important to emphasize that the department's response to these incidents were exactly, was exactly, as it should have been. The involved officers were investigated, they were eventually terminated from their employment with the DOC, they were criminally prosecuted, and they were incarcerated. The system worked like it should have. Of course, this case is not against these officers, but rather against Counselor Bachman, who was merely a supervisor in the building where Ms. Tangretti was incarcerated. We maintain in this action that the district court erred in failing to recognize that Ms. Bachman is entitled to qualified immunity. Turning to the qualified immunity analysis, obviously there are various sub parts to the analysis. In our view, and we've all the sub parts, but for today's purposes, I want to emphasize that in our view, the analysis should begin and end as it did in Pohl v. Leonard, decided by this court in 2002, and Rispardo v. Colon, decided by this court in 2014, with sort of the initial, I call it the threshold question, of whether plaintiff even has proven a constitutional violation based on all of the undisputed facts. Now, in both Pohl and Rispardo, there were various notices that were supposedly provided to the supervisor, but the supervisor on notice, the standard that used in both Pohl and Rispardo, did the supervisor know or risk that subordinate would commit the unconstitutional act? Pohl and Rispardo both looked at the notices that were supposedly provided to the supervisor and concluded, no, you do not satisfy this initial standard of the qualified immunity analysis. We say the same result is indicated here. If, in was provided to Ms. Bachman in this case, it's first important to recognize three undisputed facts. Number one, Correctional Officer Bromley, this is the only focus of the district court's analysis here, by the way, Correctional Officer Bromley was a longtime Department of Correction employee. In fact, he'd been hired in 1999, so he had been there 14, 15 years. He had no substantiated PREA or PREA-related incidents prior to his involvement with Ms. Tangretti. Second substantial fact is for a long, significant number of years, there were no similar type incidents at York of sexual contact between staff and inmates. We submitted the affidavits of the York Wardens from 2019 to 2015, both who said, no, there were no similar type incidents at York of sexual contact between staff and inmates. Third important fact to recognize or to take into consideration when looking at the notice that was provided to Ms. Bachman is it's undisputed that she had no direct knowledge or information concerning the sexual relationship between Bromley and Tangretti. The notice Well, isn't the argument of the district court that she was a counselor and she observed some familiar, overly familiar interactions between Ms. Tangretti and the officers and also had seen Ms. Tangretti directly and noticed that she was despondent and something was wrong, and isn't the argument that she should have inquired further? Well, I would mildly disagree with the court's characterization as overly familiar conversations between Bromley and Tangretti. If you look at the record, you look at the facts, she walked in on them talking in the laundry room from a distance, I think, of eight to ten feet, talking about another correctional official, which is obviously... Okay, well, apart from that question, could I just ask you what you think about this question of supervisory liability and whether we can impose supervisory liability or the Supreme Court has told us there needs to be more of a direct connection between the supervisor and the conduct? Our position is that the Supreme Court has has spoken in Iqbal in the 2009 case that the cologne prong that we're discussing here, that's the primary claim against Ms. Foxman, may not even be applicable, may not even have any sort of... As this court said, we have considerable skepticism as to whether all the cologne factors, including this is the fourth cologne factor, apply, and that's one of our primary arguments, is that the law is not clearly established. I mean, if this court notes that these factors may not have survived, and it's uncontroverted that the district court treat it differently, some of the district courts say, no, you cannot, as the court asks, you cannot bring a claim under the fourth prong of the cologne analysis. How in the... Can I ask you this question? So, if the Supreme Court told us in Iqbal that there isn't liability of a government official for the unconstitutional conduct of their subordinates, that the plaintiff needs to plead each government official through their own actions as a violation of the Constitution, does cologne have any force, or do we need, does the just the basic elements of the offense need to be pleaded against the supervisor directly? Well, I think that that's, respectfully, that's an issue for your court to resolve. We haven't... No, I understand, that's for us to resolve, so I'm asking if you have a position on that. Well, our position would be that the Iqbal decision eliminated the second, fourth, and fifth cologne factors, and that's, so it only leaves, you know, the direct action. The direct action is based on a concept of deliberate indifference, correct? Correct. And that's what we have to, that's what we have to focus on, and you're saying that if the risk was known, and it was high enough, and she did nothing as a result of that risk, then there could be deliberate indifference, but you're saying the risk wasn't known to her, and that's the basic analysis that we would operate here, whether the risk was sufficiently high. That's the point you're making, aren't you? Yeah, I would agree with that, yeah. Okay, and that's the only issue here, is that right? I mean, it has nothing to do with sexual misconduct, whatever the officers did, it has to do with whether there was a risk of it that was known to the defendant, and whether the, so, you know, whatever may be the case of cologne versus non-cologne, after Iqbal, all we're doing is focusing on the personal liability of the corrections officer, of the supervisor, in violating the Constitution. Well, I would just say that the prong here that the district court focused on is that she was grossly negligent in supervising her subordinates. So, if you take Iqbal, they can only be responsible for their own direct action. You have, in my view, you have a conflict there. When you're in the area of gross negligence, you're close to the area of deliberate conduct, and I thought your point was, basically, whether or not she complied with the letter, and the precise letter of the regs, and whether or not she actually was, you know, followed the local procedure perfectly, that, in fact, the to go further and do anything more than she did. That is, that is our primary argument. You're correct. Yeah, and there were two instances, I recall. One was in the laundry, when she overheard the conversation talking about a fellow officer, and she said, cut it out, and then she referred it to Captain Smith, and that's what she did, and you say that was sufficient, and then the office of Bachman, and not of Bachman, but of Brodley, Tancredi was hanging around the office of Brodley, and she saw him there one time, but that was, those were the two incidents. The only incidents that she really had to tie Tancredi and Bachman to anything, tie Tancredi and Brodley to anything. That's, that's exactly right. That is, in essence, the entirety of the evidence that supposedly put Bachman on notice that Bromley was going to commit these unconstitutional acts. That's, that's correct, and we believe that's wholly insufficient under the standards in Poe and Rispardo to hold a supervisor liable. Okay, I think we, I'm sorry. The real analysis point is not so much whether she knew, it's whether or not there was a predicate for her being deliberately indifferent to something, and you're saying there wasn't a sufficient predicate for that. That is our primary argument, yes. Okay, all right. All right, thank you very much. You've reserved some time for rebuttal, so we'll hear from you again, but let's hear from the appellee, Mr. Ponvert. Thank you, Your Honor. May it please the court. Let me address, if I may, the, the notice issue that, that it seems that, that the panel is concerned with. There is far more information known to the defendant in this case that put her on notice of a risk of Bromley sexually assaulting Miss Tancredi than has been discussed in the appellant's brief and in the argument so far today. Here is what is known to, to the defendant. She knows about Bromley's behavior with the plaintiff in terms of the undue familiarity between the two of them in the laundry room and in his office in the Davis building. Though that single conversation in the laundry room is enough to put her on notice of undue familiarity and enough for her to report the risk of sexual assault, and we know this because it is admitted by the Commissioner of the Department of Correction, who said at that moment she had a duty to report. He also admitted causation, which is if she had reported. She did report, right? She reported it, but not as sexual assault, but as undue familiarity. No, no, she never reported. So, they, the defendant claims that. Wait a minute, Counselor, what about the conversation with Captain Smith? That is exactly what I wanted to address. That's exactly what I want to address right now. What, this is, this is the actual record, and this is at Appendix 0215. Her statement, Bachman's statement to Captain Smith is, according to her interview at that page of the appendix, quote, she said, I said to Smith, quote, hey I kind of have this situation brewing with Bromley, end quote. But that might have actually transpired, this is her speaking, after Bromley was moved out of the Davis building. That report, first of all, it doesn't say anything about sexual familiarity. All it says is, according to her, I kind of have this situation brewing with Bromley. And, and that doesn't put Smith on notice of anything, but for, to me it stands for two propositions. One, she is on actual notice that there's an issue with Bromley, and two, she fails to report it, because that's not a report. That's a statement she then admits might actually have been made after Bromley's already out of the Davis building and all the damage has been done. So, there is no report to anyone at any time until after October 31st, 2014, a month after Bromley's been moved out of the building. So, the notice, so the, no argument is that, I mean, she had notice of these interactions and she should have inferred that there was a risk of sexual misconduct, right, or sexual assault. That's part of it, Judge. That's part of it, Judge. Do you agree, because I'd like to get into all of the details. I don't agree. I'm sorry, I don't agree with that. Well, I didn't say, I didn't, I didn't explain what you, what I was asking, whether you agree with. So, I was going to say, do you agree with what opposing counsel said, which is that the district court relied on prong four of the Cologne factors, which is that she was grossly negligent, and so, and so that's what the survival of this claim depends on. No, I don't agree with that. I don't agree with that. So, if the standard were deliberate indifference, do you think it's possible to make a showing of deliberate indifference against Bachman? Absolutely, absolutely, because what she knows, at the time that she is failing to report the activities of her direct supervisee, so she's the, she's the, she's the person in charge. There's only three officers in the Davis building over which she has supervisory responsibility. Bromley is one of them. She admits, this is at my brief, page 17, note 9, that there is questionable and inappropriate behavior. Prior, there were prior allegations of sexual abuse of other inmates by Bromley at the same time that she was aware of. That's my brief at 16, note 8. There were complaints from other inmates about Bromley's behavior toward the plaintiff. That's appellant's brief at 14. She knows and admits that the cameras would have been useful in Davis to prevent misconduct, and she had made multiple reports that there were no cameras, including in the laundry room and in the office where the inappropriate conduct took place. And so, what we, what we have is direct viewing of undue familiarity, conversations between Bromley that occur after he has been instructed to no longer do them. So, we have inappropriate behavior by him toward this one inmate, where Bachman, the defendant, says, cut it out. He doesn't cut it out. She then says to Smith, you know, I've got this thing brewing with Bromley, so she's clearly aware of it. And what, and what Priya says, and what the DOC's own administrative directives say is, undue familiarity is the evidence of a risk of sexual assault. That's what the administrative directive said. So, it's not a matter of, well, it's just a conversation, and so, therefore, that didn't put her on notice of the risk. Actually, she concludes, as does the Commissioner of the Department of Correction, Semple, in his testimony, that the exact thing she observed is the exact evidence that would put, and should put, a supervisor on notice of a possible Priya violation. So, it's not... Okay, so you're arguing that, actually, you could make that a case of deliberate indifference against Bachman, but I guess I have the, I just want to clarify where you stand on this question of supervisory liability. So, if in Iqbal, the Supreme Court tells us that a plaintiff must plead that each government official, defendant, or the official's own individual action has violated the Constitution, doesn't that mean that instead of looking to a special standard for supervisory liability, we should look at the elements of an Eighth Amendment violation? The plaintiff must plead both conditions of confinement that objectively pose an unreasonable risk of serious harm, and if the defendant acted with deliberate indifference. I mean, after Iqbal, doesn't that suggest that we have to require a plaintiff to plead those elements against any government official, and there isn't a different standard for a reason that's stated so far in the brief, that deliberate indifference is proven on these facts. The second response is, I don't believe Your Honor's interpretation of Iqbal is correct. Iqbal concerned intentional discrimination. It was a case having to do with discriminatory intent, and in that context, what the Supreme Court said was, when you have to prove discriminatory intent, you have to have more personal involvement by the plaintiff of the very thing being claimed as the constitutional violation, which is racial or religious or other types of discrimination. So in that context, the Supreme Court said, we need more involvement, we need proof of deliberate indifference and proof of discriminatory intent. What this court has said on, I think, a dozen occasions since this issue of Iqbal came up, and these are all quoted in my brief, this court has said time and time again, we are not interpreting Iqbal that way. Cologne still governs. These are cases that have been decided as recently as in the last year, that the five... Haven't we reserved the question? Haven't we said we're not sure, and so we've been able to resolve the case on other grounds without inclusively resolving this question? We've never said directly that Iqbal doesn't affect the Cologne factors, have we? No, actually, the panel, the different panels have said different things, with some saying what Your Honor suggests, which is, you know, here we don't really need to decide it because there's evidence of deliberate indifference or for some other reason. But, and so Cologne is not properly before us. We've not yet determined the contours of supervisory liability. Iqbal may have... I'm quoting this court in a number of different cases. You know, I understand. So I understand what was said in those cases. So I guess I have this question about Iqbal. So you're saying that Iqbal is only about intentional discrimination and any other, any other kind of a case or any other constitutional violation, Iqbal just shouldn't apply. But in Iqbal, the argument, you know, Iqbal's argument was that he was subjected to, you know, conditions of confinement that would amount to an Eighth Amendment violation, but it was motivated by a discriminatory animus. So you're saying if he had just pleaded it as an Eighth Amendment violation, as opposed to a discrimination case, that it would have come out totally differently and the Supreme Court would never have said what it said about supervisory liability? Oh, I think... It was just a matter of pleading in that case? I think the better way to approach the In terms of the five factors that apply in this context of an Eighth Amendment claim, this court would have recognized that by now. It's had more than ten years to do that, and it hasn't done it. And the reason it hasn't done it is because Iqbal doesn't stand for the proposition that Your Honor just stated. It is a limited holding in a limited case involving a very different kind of claim than that made here. And so back to your question of a few minutes ago, Judge, about what are the factors under Cologne that apply here. And both as a matter of law and as a matter of policy, these are the ones that do and should apply. The fourth factor, grossly negligent in supervising subordinates who committed the assaults. The fifth factor, which is exhibited delivered indifference by failing to act on information that the unconstitutional acts were occurring. And that's a new or should have known standard. And also the second Cologne factor, which is the defendant, after being informed of the violation through a report, failed to remedy the wrong. And so I guess my proposition, my question as a matter of policy, would be why would the Supreme Court have overruled those Cologne factors? It doesn't make sense in the context of an Eighth Amendment violation in a Department of Correction supervisory liability case where all of those three factors are met by the evidence before the court. And if the Iqbal decision had meant to do something like that, this court would have long ago understood it and applied it. And so what we have here is a matter of clearly established law. It's not the dicta from Second Circuit cases saying we're not really sure yet what Iqbal decided or how it applies or might apply in this context. We don't face decisions on dicta. We don't ask government officials to operate according to dicta. We don't allow supervisory officials to evade responsibility in Eighth Amendment claims by citing to dicta. What we do is we require them to do what your honors have to do, which is to follow the law as it has been set out by the decisions of this court in this context on dozens of occasions. And I think we have, I think we have the argument. So unless any of my colleagues have further questions, let's hear back from the appellant on rebuttal. Thank you, Your Honor. Mr. Beiser. Thank you, Your Honor. Two brief points. First, the fact that we're having this active discussion as to the applicability of Cologne and how far it goes and plaintiff's theory on intentional discrimination underscores my client's entitlement to qualified immunity. If the court wants to declare that Iqbal applies to all five or only applies to one, four, five, that's fine and that's for another case perhaps. But the fact is my client is entitled to qualified immunity because the law is not clearly established, it's clearly not clearly established based on this discussion. Second quick point I'd like to make, the plaintiff's attorney mentioned Commissioner Semple and I'd like the court to review Commissioner Semple's deposition because he clearly focused his comments only on the laundry room incident where Bromley and Tangretti were discussing another correctional employee. And it's without question, it is a violation of the administrative directives to discuss business matters of employees with an inmate. That's uncontroverted. So it's clearly, it's appropriately the have been reported. But he also said, he was asked point-blank by plaintiff's counsel, did any officer in the chain of command exhibit negligence in any way in regard to their supervision of Bromley and the other two officers? No, he said. He said clearly and specifically no. So his opinion is only worse the fact that perhaps Bachman violated a DOC administrative directive by failing to report the laundry room incident. And this court has held. Well, what about, what about the argument, what about the argument that the administrative directives explained to her or she should have known that the familiar conversation was itself evidence of a risk of sexual assault? That doesn't get, I don't agree with that characterization, first of all. And it doesn't get to the deliberate indifference standard. You have to, you Ms. Bachman's observation of this laundry room incident, regardless of Semple's opinion, does not change. He witnessed, or she witnessed a somewhat innocuous discussion between a CO, a correctional officer, and an inmate in which we were discussing a different correctional officer. It doesn't, it doesn't change, it doesn't change if experts in the field think that this interaction indicates sexual assault. I understand your argument that maybe not everybody would think the interaction showed that sexual assault was happening, but, but the argument from the other side is that you have these protocols in the prison system that say that this is evidence of sexual assault. So why isn't that knowledge of a risk of sexual assault? I don't agree with, with counsel's representation that any technical violation of the administrative directive is indicative of the likelihood of a sexual assault. That simply doesn't make any sense. But your point is that the constitutional norm cannot be shaped by prison regulations. Whatever the constitutional norm is, that's the norm. And prison regulations may bear on thinking about whether that norm is violated, but it doesn't define the parameters of that norm. That's exactly it. Thank you very much for your argument. The case is submitted.